# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| DIANE LYNN VANEPPS, | |
| Plaintiff, | No. 18-CV-5-LTS |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

The claimant, Diane Lynn Vanepps ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 (Act). Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled. For the following reasons, I respectfully recommend that the Court **affirm** the ALJ's decision.

## I.   BACKGROUND

I have adopted the facts as set forth in the parties' Joint Statement of Facts (Doc. 13) and, therefore, will summarize only the pertinent facts. Claimant was born in 1961, was 52 years old when she allegedly became disabled, and was 55 years old at the time of the ALJ's decision. (AR 23, 284, 349).[1] Claimant alleged she became disabled on September 13, 2013, due to fibromyalgia and diabetes. (AR 284, 349). Claimant completed high school and had prior work experience as a janitor and kitchen helper. (AR99-100, 350, 394).

---

[1] "AR" refers to the administrative record below.

On September 16, 2013, claimant applied for disability insurance benefits, which the Commissioner denied initially and upon reconsideration. (AR 172, 177, 284). On February 18, 2015, ALJ Matthew Allen held a hearing on claimant's case. (AR 41-47). On March 4, 2015, the ALJ found claimant was not disabled. (AR 137-54). The Appeals Council remanded the case and ALJ Tom Andrews held a second hearing. (AR 88-117). On February 15, 2017, the ALJ again denied claimant's application, finding she was not disabled. (AR 13-33). On December 11, 2017, the Appeals Council denied claimant's request for review, making the ALJ's decision final and subject to judicial review. (AR 1-3).

On January 8, 2018, claimant filed her complaint in this Court. (Doc. 4). By July 16, 2018, the parties had submitted their respective briefs. (Docs. 14; 15, & 16). On July 17, 2018, the Court deemed this case fully submitted and ready for decision. (Doc. 17). On the same date, the Honorable Leonard T. Strand, United States District Court Chief Judge, referred this case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to

get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. *Id*. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. *Id*.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. (*Id.*). An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means "the ability and aptitude necessary to perform most jobs." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b). 416. 921(b)). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.*; *see also* 20 C.F.R. § 404.1521.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the

regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If claimant can still do his past relevant work, then the claimant is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. § 416.960(b). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [claimant's] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.*

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Id.* If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. *Id.* (citing § 416.920(a)(4)(v)). At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a

disability. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Id.*

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since September 13, 2013, the alleged onset date of disability. (AR 15).

At Step Two, the ALJ found that claimant had the following severe impairments: "diabetes mellitus with reported peripheral neuropathy; degenerative disc disease." (AR 16). The ALJ considered claimant's fibromyalgia complaints but concluded that her fibromyalgia was not a severe impairment. (AR 21).

At Step Three, the ALJ found that none of claimant's impairments or combination of impairments met or medically equaled a presumptively disabling impairment listed in the relevant regulations. (AR 21-22).

At Step Four, the ALJ found claimant had the RFC to perform light work,

> except the claimant should have a position where she need no more than occasionally to climb ladders, ropes of scaffolds, climb ramps or stairs, stoop, kneel, crouch, crawl, or balance. The claimant should have a job where she is able to avoid concentrated exposure to extremes of cold, excessive vibrations or vibrating tools or machinery, or the sorts of hazards presented by unprotected heights or elevations, or dangerous or unguarded moving machinery or parts.

(AR 22). Also at Step Four, the ALJ found that, with defendant's residual functional capacity, "claimant is capable of performing past relevant work as a janitor . . . ." (AR 32). Having found claimant could perform past relevant work, the ALJ did not proceed on to Step Five.

### IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir.

5

2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it

possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

### V. DISCUSSION

Claimant argues that the ALJ erred in three ways. First, claimant argues the ALJ erred by ignoring what claimant asserts was a limited remand by the Appeals Council and by reassessing claimant's impairments contrary to the law of the case doctrine. (Doc. 14, at 5). Second, claimant argues the ALJ erred by improperly evaluating the medical opinions and making findings contrary to the evidence. (*Id.*, at 9). Third, claimant argues the ALJ erred by improperly discounting claimant's subjective complaints. (*Id.*, at 16). I will address each argument in order.

#### A. *Scope of the ALJ's Authority on Remand*

Claimant argues that the law of the case doctrine applies here, that the first ALJ found that claimant's fibromyalgia constituted a severe impairment, and that when the Appeals Council remanded this case it was for a limited purpose that did not permit the new ALJ to reassess that issue and find that claimant's fibromyalgia was not a severe impairment. (Doc. 14, at 5-9). The Commissioner disagrees and argues the law of the case doctrine does not apply to this case because the Appeals Council vacated the first ALJ's decision when it remanded the case. (Doc. 15, at 12-16). Both parties cite this

7

Court's decision in *Crum v. Colvin*, No. C14-4055-MWB, 2015 WL 5084325 (N.D. Iowa Jul. 17, 2015), as authority.

Upon review of the first ALJ's March 4, 2015, decision, the Appeals Council vacated and remanded the case to an ALJ. (AR 158). Specifically, on March 24, 2016, the Appeals Council's decision stated: "Under the authority of 20 CFR 404.977, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issue . . . ." (AR 159). The Appeals Council then stated that the ALJ's evaluation of the opinion of consultative examiner, Mark C. Taylor, M.D., was not adequate and the opinion was not consistent with the ALJ's RFC. (*Id.*). It further instructed that on remand the ALJ should, among other things, "[g]ive further consideration to the nontreating source opinion . . . [and] to the claimant's maximum residual functional capacity." (AR 160). The order concluded: "In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.*).

On remand in 2017, the ALJ held another evidentiary hearing. (AR 88-117). The ALJ further considered claimant's allegations that fibromyalgia was a severe impairment. (AR 19-21). This included the further consideration of the nontreating source opinion of Dr. Taylor. (AR 21). Because more than two years had passed since Dr. Taylor's 2014 opinion, the ALJ considered more recent medical and nonmedical evidence. (AR 20-21). In further considering claimant's residual functional capacity, the ALJ again addressed claimant's alleged disability due to fibromyalgia. (AR 22-23).

I find that the law of the case doctrine does not apply and that the ALJ properly complied with the Appeal Council's remand. First, the Appeals Council vacated the first ALJ's decision.

As this Court pointed out in *Crum*,

> "Vacate" means "[t]o nullify or cancel; make void; invalidate." BLACK'S LAW DICTIONARY 1584 (8th ed. 2004); *see United States v. Maxwell*, 590 F.3d 585, 589 (8th Cir. 2010) ("'A judgment vacated on appeal is of no further force and effect.'") (quoting *Riha v. Int'l Tel. & Tel. Corp.*, 533 F.2d 1053, 1054 (8th Cir. 1976); *Creighton v. Anderson*, 922 F.2d 443, 449 (8th Cir. 1990) ("A vacated opinion has no further force and effect."); *see also Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, --- F.3d ----, 2015 WL 4727198, at *11 (D.C. Cir. 2015) (noting that "the word 'vacate' means, among other things, 'to cancel or rescind' and 'to make of no authority or validity.'") (quoting *Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983)); *Rice v. Alpha Sec., Inc.*, 556 Fed. Appx. 257, 259 (4th Cir. 2014) (noting that "[t]he effect of 'vacating' an order is to 'nullify or cancel; make void; invalidate.'" (quoting *Ferguson v. Commonwealth*, 51 Va. App. 427, 658 S.E.2d 692, 695 (2008)); *NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 110 (1st Cir. 2002) (defining "vacate" as "to render inoperative; deprive of validity; void; annul" and that an order to vacate "wipes the slate clean").

*Crum*, 2015 WL 5084325, at *6. *See also Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (holding the law of the case doctrine did not apply when the Appeals Council vacated a prior ALJ's decision). Second, as in *Crum*, the Appeals Council in this case "did not mandate that the ALJ carry over any findings from the first decision." *Crum*, 2015 WL 5084325, at *6. Finally, the Appeals Council in this case instructed the ALJ to render a new decision. *Aguiniga*, 833 F.3d at 901 (noting that "[t]he ALJ was further directed to . . . 'issue a new decision.'"). On remand, the ALJ abided by the direction of the Appeals Council, gave claimant a new hearing, further considered the medical opinions and claimant's RFC, and rendered a new decision. The ALJ was not bound by any findings made by the prior ALJ. Therefore, I conclude the ALJ did not err and the law of the case doctrine does not apply.

9

## B. The ALJ's Evaluation of the Medical Opinions

Claimant argues that the ALJ erred "by evaluating expert opinions contrary to the correct standards and contrary to the evidence." (Doc. 14, at 9). Claimant's brief on this claim of alleged error is, at best, confusing. It begins with a criticism of the state agency consultative opinions, takes issue with the opinions of Physician Assistant Emily Wagner and Dr. Brian Heineman, disputes the ALJ's discussion of the expert medical opinions, and claims the ALJ "misstated the rule expressed in 20 C,F,R, [sic] §404.1513, stating that reports about an impairment must come from acceptable medical sources, which would rule out treating physician's assistant, Stephanie Vogeler, PA-C." (Doc. 14, at 9-13). Then claimant objects to the weight the ALJ assigned to the opinions of the various medical sources, stating that "no medical records evidence evaluates [claimant's] functional capacity" and accuses the ALJ of drawing "his own inferences from cherry picked portions of the records . . . and replaced the expert medical opinions with his own lay opinion regarding [claimant's] physical exertional capacity . . .." (Doc. 14, at 13-16).

A claimant's RFC is a medical question, and, thus, some medical evidence must support the determination of a claimant's RFC. *Eichelberger*, 390 F.3d at 591. Claimant is correct in that the administrative record does not contain a "medical opinion," directly addressing how claimant's impairments affect her ability to function.[2] *See* 20 C.F.R. 404.1527(a)(1). Eighth Circuit precedent, however, does not require a "medical opinion" when the ALJ relied on objective medical evidence in assessing claimant's RFC. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). "The question is whether there

---

[2] "*Medical opinions*. Medical opinions are statements from . . . *acceptable medical sources* that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2) (emphasis added) (effective for claims filed before March 27, 2017).

10

is sufficient evidence of 'how [the claimant's] impairments . . . affect [her] residual functional capacity to do other work,' or her 'ability to function in the workplace.'" *Morrow v. Berryhill*, No. C16-2023-LTS, 2017 WL 3581014, at *7 (N.D. Iowa Aug. 18, 2017) (omission and alteration in original) (quoting *Hattig v. Colvin*, No. C12-4092 MWB, 2013 WL 6511866, at *11 (N.D. Iowa Dec. 12, 2013)). Finally, claimant bears the burden of proving her RFC. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016).

Claimant argues that it is the ALJ's duty to ensure that the record includes evidence produced by a treating or examining physician that addresses claimant's impairments and cites *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), in support of this proposition. (Doc. 14, at 16). Nevertheless, the holding in *Nevland* "does not compel remand in every case in which the administrative record lacks a treating doctor's opinion." *Morrow*, 2017 WL 3581014, at *7 (citation and internal quotation marks omitted). The Court may affirm the ALJ's decision, even without an opinion from a treating or examining source, if there is other medical evidence demonstrating the claimant's ability to function in the workplace. *Id.*; *see also Agan v. Astrue*, 922 F. Supp.2d 730, 756 (N.D. Iowa 2013) (upholding ALJ's decision where the ALJ's decision was supported by substantial evidence on the record as a whole, even though the ALJ did not rely on the opinion of a treating physician in formulating his opinion). In the end, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley*, 829 F.3d at 932 (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence), and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)).

The ALJ found claimant could perform light work, except for several additional limitations he identified in claimant's RFC. (AR 22). The ALJ arrived at claimant's RFC after thoroughly reviewing and weighing the medical and nonmedical evidence, which the ALJ summarized in significant detail. (AR 22-30). The ALJ afforded the

11

opinions of Dr. Taylor "some limited weight" because he was a one-time, non-treating examining physician who saw claimant in 2014, was not aware of other evidence since that time, did not review claimant's historical treatment records which, among other things, reflected her noncompliance with medication and treatment, and because Dr. Taylor relied heavily on claimant's subjective statements. (AR 27-28). The ALJ afforded the opinions of Physician Assistant Vogeler "little weight" because she was not an acceptable medical source,[3] her opinions were not supported with adequate explanations, it appeared she adopted claimant's subjective allegations, and because PA Vogeler's records reflect findings inconsistent with the extreme limitations reflected in her opinion. (AR 28). The ALJ afforded the opinions of PA Wagner and Dr. Heineman[4] "considerable weight" because their consultative physical examination was recent, they noted "numerous inconsistencies" between claimant's stated limitations and their observations and testing, including the revealing observations made when claimant left their clinic and displayed physical capabilities in opening the door and pointing that contrasted starkly with her performance during her physical examination. (AR 28-30). Finally, the ALJ afforded "great weight" to the state agency consultative opinion of Dr. Chrystalla Daly, duly recognizing that she was a non-examining expert source. (AR 32).

---

[3] Claimant places importance on the ALJ's incorrect citation of authority when stating this ground for discounting PA Vogeler's opinions. The ALJ cited 20 C.F.R. § 404.1513, which did not apply to claimant's case because it was filed before March 27, 2017. The correct citation is 20 C.F.R. § 1527, which the ALJ was paraphrasing. I find this incorrect citation immaterial to the merits of the ALJ's analysis.

[4] The Commissioner describes PA Wagner and Dr. Heineman as co-authoring a joint opinion. (Doc. 15, at 24). Claimant takes issue with this, asserting that it is an assumption and not a fact and reflects an effort to afford more weight to PA Wagner's opinion than is its due. (Doc. 16, at 3-4). Upon my review of the records (AR 549-61), it reflects both PA Wagner's name and signature, and Dr. Heineman's signature. The ALJ and the Commissioner, and this Court, can reasonably rely upon Dr. Heineman's signature on the opinion as an indication that Dr. Heineman shared the opinion.

The ALJ found that opinion entitled to great weight because of her "specific knowledge of the applicable rules and regulations" and because she "supported her opinions with a thorough evaluation of the medical findings." (*Id.*).

Upon my own review of the record, I find the weight the ALJ afforded to the various medical sources supported by substantial evidence in the record as a whole. The ALJ thoroughly summarized the various medical source's records and examination or treatment of claimant, and specifically identified grounds for which the ALJ assessed the weight to be afforded each of the medical sources. I further find that the ALJ could properly rely upon the state agency consultative doctor's opinion because, as the ALJ noted, the doctor was familiar with the standards and reviewed the medical records as a whole. *See Buford*, 824 F.3d at 797 (holding that an ALJ may rely upon state-agency consultative expert opinions even when there was no opinion from a treating physician). The non-examining medical expert opinion can satisfy an ALJ's requirement to base an RFC on at least some supporting medical opinion evidence. *See Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (finding the ALJ's RFC was supported by some evidence from a medical profession where the ALJ "particularly relied" on opinions by a state agency consultative source and a non-treating, examining source). Ultimately, I find the ALJ's residual functional capacity assessment was based on substantial evidence because it was based on all of the medical evidence, adequately explaining the weight the ALJ afforded the evidence. *See Anderson v. Shalala*, 51 F.3d 777, 779-80 (8th Cir. 1995) (holding that the ALJ's RFC determination was supported by substantial evidence when the ALJ relied on the opinions of two reviewing physicians; the opinions of treating physicians to the extent they were based on objective evaluations, but not the claimant's subjective complaints; and an independent analysis of the medical evidence). In short, substantial evidence supported the ALJ's decision "even if [the court or claimant] might have weighed the evidence differently." *Browning*, 958 F.2d at 822.

### C. Claimant's Subjective Allegations

Claimant argues that the ALJ improperly discounted claimant's subjective statements regarding her limitations. (Doc. 14, at 16-23). Claimant in particular emphasizes that the ALJ conducted the hearing via video teleconferencing, and suggests that since the ALJ was not in the same room as claimant that no or little deference is owed to the ALJ's credibility assessment. (*Id.*, at 16-19). Claimant takes issue with the ALJ's explanation for discounting claimant's subjective complaints, arguing the ALJ improperly rejected claimant's reports of pain she attributed to fibromyalgia because of an absence of medical tests. (*Id.*, at 20-21). Claimant further argues that the ALJ's assertion that claimant was noncompliant with medications and treatment was overstated and the ALJ should have determined if claimant's noncompliance was the result of her limited functioning. (*Id.*, at 21-22). Finally, claimant argues that the ALJ's assessment of claimant's daily activities was erroneous, focusing on the ALJ's statement that claimant was able to drive was simply not true and inconsistent with claimant's testimony. (*Id.*, at 22-23).

A claimant's subjective allegations are to be evaluated according to the standards set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (outlining the factors that the adjudicator must give full consideration to relating to subjective complaints). In addition to the objective medical evidence, the ALJ must consider, *inter alia*: "(i) [the] claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) dosage, effectiveness, and side effects of medication; and (v) functional restrictions." *Wheeler v. Berryhill*, No. C17-4038-LTS, 2018 WL 2266514, at *6 (N.D. Iowa May 17, 2018) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005)).

Here, the ALJ referenced claimant's daily activities; the location, duration, frequency, and intensity of claimant's pain; factors that precipitate and aggravate the

14

symptoms; effectiveness of medication or other treatment modalities; and any other factors that concern claimant's functional limitations. (AR 16-23, 30-32); *accord Polaski*, 739 F.2d. at 1322. Although the ALJ did not specifically cite to the *Polaski* case, the ALJ nevertheless discussed the required relevant factors. Nothing more is needed. *See Myers*, 721 F.3d at 527 (holding the ALJ "was not required to discuss each factor's weight in the credibility calculus"). "If the ALJ gives good reasons for discrediting some testimony, the court is bound by that finding unless it is not supported by substantial evidence on the record as a whole." *Wheeler*, 2018 WL 2266514, at *7 (citing *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)). This Court, in *Wheeler*, pointed to several instances where the ALJ identified inconsistencies between claimant's complaints and the medical evidence of record as sufficient "good reasons" for the ALJ to discredit claimant's testimony. (*Id.*). That is equally true in this case.

In his decision, the ALJ pointed to the lack of medical findings to support claimant's subjective complaints, noted that claimant was chronically noncompliant, and pointed out, among other things, the inconsistency of claimant's complaints and the observations medical sources made of claimant's movements when leaving a medical clinic. Regarding claimant's noncompliance, upon my own review of the medical records I find there was sufficient evidence for the ALJ to conclude that claimant was chronically noncompliant, particularly with regard to following recommendations for addressing her diabetes. The ALJ was permitted to conclude that that noncompliance was a factor to consider in discounting claimant's subjective complaints.[5] Regarding claimant's assertion that the ALJ erred in stating that claimant was able to drive, my review of the record

---

[5] To the extent claimant argues that the ALJ was required to eliminate the possibility that claimant was noncompliant because of her impairments that is required only if an ALJ finds a claimant is otherwise disabled, but makes a finding of no disability because the claimant was noncompliant. *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). That did not occur in this case.

15

reflects that the ALJ did not err. During her February 18, 2015, testimony, claimant admitted having a driver's license and when asked if she was able to drive, answered: "So far, yeah . . ." and went on to state that she tries to limit her driving because it bothers her in various ways. (AR 57). She admitted driving to the hearing. (*Id.*). At the December 13, 2016, hearing claimant again admitted having a driver's license but claimed she did not in fact drive because "I don't feel safe till I get my diabetes under control and my fibromyalgia." (AR 96-97). Claimant's testimony would support the ALJ's conclusion, therefore, that claimant was able to drive, even if she chose not to do so.

Finally, I reject claimant's argument that a different, less deferential standard should apply to an ALJ's assessment of a claimant's subjective complaints when the hearing is conducted by video teleconferencing. First, there is no legal authority to support that legal principle. Second, as the Commissioner points out, "subjective symptom evaluation is not an examination of an individual's character." (Doc. 15, at 31, citing SSR 16-3p, 2017 WL 5180403, at *2, 20 C.F.R. § 404.1529). Rather, in assessing a claimant's subjective complaints, an ALJ is not to rely on a visual assessment of claimant's demeanor alone, but is to consider factors such as whether claimant's subjective complaints are consistent with the medical and other evidence in the record such as claimant's daily activities. Here, the ALJ did precisely that.

Contrary to claimant's argument, the ALJ did consider the record as a whole in deciding to discount claimant's subjective allegations. I find that although claimant presented testimony and evidence of disabling limitations, the ALJ's decision was supported by substantial evidence on the record as a whole.

## VI. CONCLUSION

Therefore, I respectfully recommend that the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 10th day of August, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa