## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| DIANE LYNN VANEPPS, | |
| Plaintiff, | No.  C18-5-LTS |
| vs. | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) filed by the Honorable C.J. Williams, then Chief United States Magistrate Judge.  *See* Doc. No. 19. Judge Williams recommends that I affirm the decision by the Commissioner of Social Security (the Commissioner) denying Diane Lynn Vanepps' application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* (the Act).  Vanepps filed timely objections (Doc. No. 20).  The background is set forth in the R&R and is repeated herein only to the extent necessary.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive  . . .").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."  *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir.

2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v.*

*Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B.   Review of Report and Recommendation

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude

3

further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


### III.    THE R&R

Vanepps applied for disability insurance benefits on September 16, 2013, alleging disability beginning September 13, 2013, due to fibromyalgia and diabetes.  Doc. No. 19 at 1-2 (citing AR 172, 177, 284, 349).  After a hearing, an Administrative Law Judge (ALJ) applied the familiar five-step evaluation and found that Vanepps was not disabled as defined in the Act.  Vanepps argues the ALJ erred in determining that she was not disabled because:

1.    The ALJ ignored a limited remand from the Appeals Council by reassessing claimant's impairments contrary to the law of the case doctrine

2.    The ALJ improperly evaluated the medical opinions and made findings contrary to the evidence

3.    The ALJ improperly discounted claimant's subjective complaints

*See* Doc. No. 14.  Judge Williams addressed each argument separately.

In addressing the first issue, Judge Williams noted the dispute centered over whether the ALJ, on remand from the Appeals Council, could reassess the severity of claimant's fibromyalgia even though the case was remanded for a different reason.  *See* Doc. No. 19 at 7.  The Appeals Council found the ALJ's initial evaluation of the opinion of consultative examiner Mark C. Taylor, M.D., to be inadequate and inconsistent with the ALJ's residual functional capacity (RFC) finding.  *Id.* at 8.  The Appeals Council instructed the ALJ, on remand, to "[g]ive further consideration to the nontreating source opinion . . . [and] to the claimant's maximum residual functional capacity."  *Id.*

On remand, a different ALJ held another evidentiary hearing.  *Id.*  The ALJ considered Dr. Taylor's 2014 opinion and more recent medical and nonmedical evidence

that was introduced into the record. *Id.* The ALJ considered Vanepps' RFC and her alleged disability due to fibromyalgia. While the previous ALJ had concluded Vanepps' fibromyalgia was a severe impairment (AR 142), the ALJ on remand concluded it was not a medically determinable impairment. AR 19-21. Vanepps challenges that finding based on the law of the case doctrine.

Judge Williams concluded the doctrine does not apply and the ALJ complied with the Appeals Council's instructions on remand. Doc. No. 19 at 8. First, he noted that the Appeals Council vacated the ALJ's decision. *Id.* at 9. Second, he noted the Appeals Council "did not mandate that the ALJ carry over any findings from the first decision." *Id.* (quoting *Crum v. Colvin*, No. C14-4055-MWB, 2015 WL 5084325 (N.D. Iowa July 17, 2015)). Judge Williams concluded the ALJ did not err because the ALJ abided by the directions of the Appeals Council and was not bound by any of the previous ALJ's findings. *Id.*

Judge Williams next considered the ALJ's evaluation of the medical opinions. Vanepps argued that the ALJ erred "by evaluating expert opinions contrary to the correct standards and contrary to the evidence." *Id.* at 10 (quoting Doc. No. 14 at 9). Judge Williams noted that Vanepps criticized the ALJ's evaluation of the state agency consultative opinions and the opinions of Emily Wagner, a physician assistant, and Dr. Brian Heineman. She also disputed the ALJ's discussion of the expert medical opinions and claimed the ALJ misstated the rule expressed in 20 C.F.R. § 404.1513. *Id.* (citing Doc. No. 14 at 9-13). Vanepps objected to the weight the ALJ assigned the opinions of various medical sources, stating that none of the medical records evaluated Vanepps' functional capacity and that the ALJ substituted his own opinions for the expert medical opinions. *Id.*

Judge Williams agreed that the administrative record does not contain a medical opinion directly addressing how claimant's impairments affect her ability to function, but noted that the Eighth Circuit does not require one when an ALJ relies on the objective medical evidence to assess a claimant's RFC. *Id.* (citing *Hensley v. Colvin*, 829 F.3d

926, 932 (8th Cir. 2016)). He stated the proper standard is "whether there is sufficient evidence of 'how [the claimant's] impairments . . . affect [her] residual functional capacity to do other work,' or her 'ability to function in the workplace.'" *Id.* at 10-11 (citing *Morrow v. Berryhill*, No. C16-2023-LTS, 2017 WL 3581014, at *7 (N.D. Iowa Aug. 18, 2017)). Judge Williams noted the ALJ summarized the medical and nonmedical evidence in significant detail in concluding Vanepps could perform light work with several additional limitations. *Id.* at 11. He then discussed the weight the ALJ assigned to each medical opinion as well as the ALJ's reasons for the assigned weights. *Id.* at 12-13.

Upon his own review of the record, Judge Williams concluded the weights assigned to the medical sources were supported by substantial evidence in the record as a whole. *Id.* at 13. He found that the ALJ properly relied upon the state agency consultative doctor's opinion because the doctor was familiar with the standards and reviewed the medical records as a whole. *Id.* Ultimately, he concluded the ALJ's RFC assessment was supported by substantial evidence because it was based on all the medical evidence and the ALJ adequately explained the weight he afforded the evidence. *Id.*

Finally, Judge Williams considered Vanepps' subjective allegations. *Id.* at 14. Vanepps argued that the ALJ improperly discounted her subjective statements regarding her limitations. Specifically, she stated that the ALJ's credibility assessment deserved little to no deference because the hearing was conducted over teleconference rather than in person. *Id.* She also took issue with the ALJ rejecting her reports of pain due to fibromyalgia based on the absence of medical tests. *Id.* She argued that noncompliance with medications and treatment was also not a good reason for discounting her subjective allegations without a finding that the noncompliance was not the result of her limited functioning. *Id.* Finally, she argued the ALJ's assessment of her daily activities was erroneous, including a statement that she was able to drive, which she contends is inconsistent with her testimony. *Id.*

After citing the applicable standards for analyzing a claimant's subjective allegations, Judge Williams noted that the ALJ discussed the relevant factors, even though he did not cite *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), which is not required. *Id.* at 15. He concluded the ALJ provided good reasons for discrediting Vanepps' subjective allegations. He pointed to the lack of medical findings supporting her subjective complaints, noted that she was chronically noncompliant with treatment recommendations and that her complaints were inconsistent with observations by medical providers that suggested her abilities were greater than alleged. *Id.* Judge Williams stated that based on his own review of the record, the ALJ's reason of chronic noncompliance was supported by the record, particularly with regard to following recommendations for addressing her diabetes. *Id.* He noted that an ALJ need not determine whether noncompliance was related to an impairment unless the non-disability finding relied solely on the claimant's noncompliance. *Id.* at n.5 (citing *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001)).

Judge Williams found no error with the ALJ discounting Vanepps' subjective complaints based on noncompliance as one factor among many. With regard to Vanepps' ability to drive, he likewise found no error. Vanepps admitted during the February 18, 2015, hearing that she had a driver's license and when asked if she was able to drive, she stated "So far, yeah . . ." and then added she tries to limit her driving because it bothers her in various ways. *Id.* at 15-16 (citing AR 57). During the December 13, 2016, hearing, she again admitted to having a driver's license, but claimed she did not drive because she did not feel safe until she got her diabetes and fibromyalgia under control. *Id.* at 16 (citing AR 96-97). Judge Williams concluded that Vanepps' testimony supported the ALJ's conclusion that she was able to drive, even if she chose not to.

Finally, Judge Williams found no legal authority for Vanepps' argument that the ALJ's credibility finding was entitled to less deference based on the nature of the hearing as a video teleconference rather than an in-person hearing. *Id.* He noted that in assessing a claimant's subjective complaints, the ALJ is entitled to consider whether those

complaints are consistent with the medical and other evidence in the record such as a claimant's daily activities, which is what the ALJ did. *Id.* Judge Williams concluded that the ALJ considered the record as a whole in discounting claimant's subjective allegations and his decision was supported by substantial evidence on the record as a whole. *Id.* For all of these reasons, Judge Williams recommends that I affirm the Commissioner's decision that Vanepps is not disabled.

## IV. DISCUSSION

Vanepps objects to Judge Williams' findings that (1) the law of the case doctrine does not apply, (2) that Vanepps' RFC was supported by sufficient objective medical evidence even in the absence of an expert medical opinion and (3) the ALJ provided good reasons for discounting Vanepps' subjective allegations. *See* Doc. No. 20. I will address each objection in turn.[1]

### A. Law of the Case Doctrine

Vanepps argues that Judge Williams did not address the Eighth Circuit precedent cited in her brief, but instead relied on a district court decision in concluding the law of the case doctrine did not apply under these circumstances. She admits that the Appeals Council used the word "vacate" in its decision, but notes that it limited the scope of

---

[1] In a recent decision involving another claimant, I noted Vanepps' counsel's flippant and disrespectful written presentation, including her use of the incorrect title of "Magistrate" and, more disturbingly, her suggestions of intentional wrongdoing on the part of a federal judicial officer. *See Castillo v. Berryhill*, No. C17-4072, 2019 WL 630292, at *6 n.5 (N.D. Iowa Feb. 14, 2019). The current objection presents the same improper content. *See, e.g.,* Doc. No. 20 at 3 ("The Magistrate has misstated, seemingly deliberately, Plaintiff's argument . . ."). While I understand that this objection was filed before I filed my order in *Castillo*, counsel is on notice that such obnoxious conduct will not be tolerated in future filings. I will, as necessary, strike offending filings and, if the behaviors continue, initial disciplinary proceedings pursuant to Local Rule 83.g. Any attorney who cannot present an argument without resorting to personal attacks can find another forum in which to practice.

review on remand. *Id.* at 1. Vanepps also cites 20 C.F.R. § 404.979, noting that it permits the Appeals Council to "make a decision or remand" and "affirm, modify or reverse," but not vacate. She argues that "a remand to resolve a specific issue does not cancel or render null and void all of the findings of the previous decision." *Id.* at 2.

In her original brief, Vanepps cited several Eighth Circuit cases arguing that the law of the case doctrine applies to administrative agencies on remand. *See* Doc. No. 14 at 5-6 (citing *e.g.*, *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997)). She acknowledges that the Hearings, Appeals, and Litigation Law Manual (HALLEX) for the Social Security Administration includes an instruction that when the Appeals Council remands a case to the hearing level after a court remand, it generally vacates the entire ALJ decision and the ALJ must consider all pertinent issues de novo. *See* HALLEX I-2-8-18 (*available at* https://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-18.html). *Id.* However, she argues that because the Appeals Council issued a limited remand, the new ALJ was required to consider only the issue identified by the Appeals Council and could not re-evaluate other, unrelated issues. *Id.*

Here, the first ALJ to review Vanepps' application found that her severe impairments consisted of fibromyalgia, diabetes mellitus and varicose veins. AR 142. He concluded that she had the RFC to perform light work except she could perform only occasional climbing, balancing, stooping, kneeling, crouching and crawling. AR 145. She should also avoid concentrated exposure to extremes of cold and vibrations, exposure to hazards such as unprotected heights or dangerous, moving machinery and that after thirty minutes of sitting, she would need to stand for five minutes before returning to sitting, but would not need to leave her work station. *Id.* In making the RFC finding, the ALJ gave great weight to the opinion of the consultative examiner, Dr. Taylor. AR 149-50.

On appeal, the Appeals Council found that the ALJ's evaluation of Dr. Taylor's opinion was not adequate because it was inconsistent with the ALJ's RFC finding, despite the fact that the ALJ assigned great weight to his opinion. AR 159. The Appeals Council

stated: "Under the authority of 20 CFR 404.977, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issue:"

> The Administrative Law Judge gave great weight to Dr. Taylor's opinion, but did not resolve apparent problems with that opinion (Exhibit 3F). Among other things, Dr. Taylor stated that the claimant could "occasionally" sit and stand, which typically would mean up to a third of a day each, and "rarely" walk, which would be for very little duration or frequency (Exhibit 3F, page 5). These limitations seem to be less than the light work level that the Administrative Law Judge found that the claimant could perform and may be even less than sedentary work. They certainly do not appear to be sufficient for an eight-hour day. In addition, Dr. Taylor said that the claimant must have the ability to 'alternate walking, standing, and sitting as needed for comfort' (Exhibit 3F, page 5). Although the hearing decision provides a sit/stand option for the claimant (Finding 5), it is not as flexible for the claimant as Dr. Taylor's, stating that 'after thirty minutes of sitting, the claimant would need to stand for five minutes before returning to sitting, but would not need to leave the workstation' (Finding 5)[.] It also does not account for walking that Dr. Taylor deemed one of the alternating positions and may require the claimant to leave the workstation. Without further explanation, it is unclear how the Administrative Law Judge resolved these issues.

AR 159. The Appeals Council then instructed:

> Upon remand, the Administrative Law Judge will:
>
> - Give further consideration to the nontreating source opinion pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the nontreating source to provide additional evidence and/or further clarification of the opinion (20 CFR 404.1512).
>
> - Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and Social Security Rulings 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

AR 160. On remand, a different ALJ found Vanepps' severe impairments consisted of diabetes mellitus with reported peripheral neuropathy and degenerative disc disease. AR 16. With regard to fibromyalgia, he summarized the same medical evidence that was before the previous ALJ and stated, "[m]ost recently, the claimant alleged poor control of fibromyalgia symptoms during an evaluation in August of 2016; however, clinical findings were unremarkable without any tender point testing." AR 21. He then stated:

There appeared to be no documentation of record supporting that other disorders that cause symptoms similar to fibromyalgia had been ruled out. Significantly, while the claimant underwent lab testing for her diabetic and cholesterol conditions, there was no evidence of testing performed in order to exclude other causes for the claimant's allegations of chronic pain. More specifically, records failed to support testing, such as anti-nuclear antibody testing or rheumatoid factor testing, in order to exclude other possibilities for the claimant's joint and muscle pain complaints (See Exhibits 6F; 9F; 11F). Given the lack of testing to rule out other causes, along with the inconsistencies regarding trigger point testing in the record, the undersigned finds the evidence does not support finding a medically determinable impairment of fibromyalgia. Accordingly, pursuant to SSR

12-2p,[2] the undersigned finds that the claimant's alleged fibromyalgia is not a medically determinable impairment.

*Id.*

I agree with Judge Williams that the law of the case doctrine does not apply here. First, the regulations provide that on remand, "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may taken any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977. Vanepps does not argue that the ALJ failed to follow the Appeals Council's instruction, but that he went too far in evaluating other, additional issues. She has not demonstrated, however, that addressing these additional issues was inconsistent with the Appeals Council order.

Second, none of the cases Vanepps cited in her initial brief address the law of the case doctrine in this context. Rather, those cases deal primarily with a remand from the district court to the administrative agency. *See* Doc. No. 14 at 5-6 (citing *e.g. Brachtel*, 132 F.3d at 419). This situation is different, as there was no final decision by the Commissioner (to which the law of the case doctrine could attach) until the Appeals Council denied plaintiffs' February 2017 request for review of the second ALJ decision. Because 42 U.S.C. § 405(g) authorizes judicial review solely to determine whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review. *See* Doc. No. 15 at 13 (citing *Sanders v. Astrue*, No. 4:11CV1735 RWS (TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013) ("The issue whether an ALJ complied with a remand order

---

[2] As explained in the ALJ's decision, this Social Security Ruling sets forth criteria for concluding that a claimant has a medically determinable impairment of fibromyalgia. These include: (1) a history of widespread pain, (2) repeated manifestations of six or more fibromyalgia symptoms, signs or co-occurring conditions and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs or co-occurring conditions were excluded. *See* AR 19.

evaporates when the Appeals Council adopts the ALJ's decision as the Commissioner's final decision; with that action, the Appeals Council implicitly acknowledges that the ALJ's decision is compliant with the remand order.")). Because the second ALJ's decision complied with 20 C.F.R. § 404.977 and the Appeals Council took no issue with the way the ALJ handled the Appeals Council's instructions on remand, there is no error based on the law of the case doctrine. This objection is overruled.

### B.    *Medical Evidence in Support of RFC*

Vanepps argues Judge Williams did not identify, describe or explain what "objective medical evidence" supported the ALJ's RFC finding in the absence of a specific medical opinion supporting the RFC. She also disagrees with Judge Williams' discussion of the medical opinions and whether the weight assigned to them was proper.

Judge Williams noted that the ALJ arrived at the claimant's RFC after "thoroughly reviewing and weighing the medical and nonmedical evidence, which the ALJ summarized in significant detail." Doc. No. 19 at 11 (citing 22-30). Judge Williams then summarized the weight the ALJ assigned to each medical opinion and his reasons for doing so. *Id.* at 12-13. He stated that, upon his own review of the record, he found the weight the ALJ afforded the various medical sources was supported by substantial evidence in the record as a whole. *Id.* With regard to the state agency consultant's opinion, he found the ALJ could properly rely on this opinion because, as the ALJ noted, "the doctor was familiar with the standards and reviewed the medical records as a whole." *Id.* at 13.

While Judge Williams may not have explicitly discussed the objective medical evidence supporting the ALJ's RFC finding, the ALJ did. The ALJ found Vanepps had the RFC to perform light work, except she could no more than occasionally climb ladders, ropes or scaffolds, climb ramps or stairs, stoop, kneel, crouch, crawl or balance. The ALJ also found that Vanepps should avoid concentrated exposure to extremes of cold, excessive vibrations or vibrating tools or machinery, or the sorts of hazards presented by

unprotected heights or elevations, or dangerous or unguarded moving machinery or parts. AR 22. In making his RFC findings, the ALJ first discussed Vanepps' reported symptoms and allegations regarding her limitations in daily activities. AR 22-23. He then summarized the objective medical evidence over two-and-a-half, single-spaced pages. AR 24-26. Due to the nature of some of Vanepps' impairments, many of the medical records include subjective complaints such as pain and difficulties with some movements. Nonetheless, the ALJ noted when the medical evidence showed that Vanepps admitted to noncompliance, when she denied any symptoms, when physical examinations were unremarkable and when clinical findings were inconsistent with Vanepps' allegations of disabling symptoms. *Id.*

When Vanepps complained of knee and shoulder pain, x-rays were ordered that revealed negative or minimal findings. AR 26. EMG testing was also unremarkable bilaterally. *Id.* In April 2016, Vanepps had an MRI of her lumbar spine. *Id.* This showed "degenerative changes and disc bulges/protrusions, greatest at L3-4, where there was moderate central canal stenosis and moderately severe left foraminal stenosis." *Id.* In addition, "at the L2-3, level there was moderate central canal stenosis and moderate left foraminal stenosis." *Id.* During a primary care evaluation at this time, Vanepps reported pain in the lower back, decreased strength in the left lower extremity and decreased grip bilaterally. *Id.* Over the following months, she did not report any further back pain issues. *Id.* Other than some paraspinal tenderness, the clinical findings were unremarkable. *Id.* Judge Williams compared this summary with the administrative record and found that it was supported by substantial evidence in the record as a whole. I agree with Judge Williams that the ALJ sufficiently discussed the objective medical evidence supporting the RFC.

With regard to the opinion evidence, Vanepps argues that Judge Williams "minimize[d] the treating source opinion because she was not an MD, treated the consultative exam report as if it had been conducted and written by an MD, in spite of the fact that it seems clear that it was only written by the PA, and finally elevated the

importance of the non-examining state agency consultant, Dr. Daly, because she allegedly has knowledge of the rules and regulations." Doc. No. 20 at 2-3. Judge Williams noted that the ALJ gave Dr. Taylor's opinions "some limited weight" because he was a one-time, non-treating examining physician who saw Vanepps in 2014, was not aware of other evidence since that time, did not review claimant's historical treatment records (reflecting noncompliance with medication and treatment) and he relied heavily on Vanepps' subjective statements. Doc. No. 19 at 12 (citing AR 27-28). He noted the ALJ gave physician assistant Vogeler's opinion "little weight" because she was not an acceptable medical source, her opinions were not supported with adequate explanations, it appeared she adopted Vanepps' subjective allegations and her records included findings that were inconsistent with the extreme limitations provided in her opinion. *Id.* citing (AR 28).[3]

Judge Williams also agreed with the Commissioner that physician assistant Wagner and Dr. Heineman appeared to have co-authored a joint opinion, which the ALJ assigned "considerable weight" because their consultative physical examination had been recently performed, they noted "numerous inconsistencies" between Vanepps' stated limitations and their observations and testing, including observations made when Vanepps left their clinic and displayed physical capabilities that were inconsistent with her performance during the physical examination. *Id.* at 12 (citing AR 28-30). Finally, Judge Williams noted the ALJ gave "great weight" to the opinion of Dr. Chrystalla Daly, the non-examining state agency consultant based on her "specific knowledge of the applicable rules and regulations" and because her opinions were supported with a thorough evaluation of the medical findings. *Id.* at 12-13 (citing AR 32).

---

[3] Judge Williams noted that the ALJ cited the wrong regulation in discounting Vogeler's opinion based, in part, on the fact that she was not an acceptable medical source. Doc. No. 19 at 12, n.3. He stated, however, that the ALJ paraphrased the correct regulation and found the incorrect citation to be immaterial to the ALJ's analysis. *Id.*

I agree with Judge Williams that substantial evidence in the record as a whole supports the ALJ's description of the medical evidence and the RFC finding. The ALJ thoroughly explained the medical evidence that supported his RFC finding. *See* AR 22-32. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) and *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012)).

I also find no error with regard to Judge Williams' discussion of the medical opinion evidence. While Vanepps criticizes the fact that Vogeler's opinion did not receive more weight simply because she is not an acceptable medical source, that conclusion is specifically allowed by the Social Security regulations, which give significant discretion to the ALJ in evaluating other medical sources. *See* 20 C.F.R. § 404.1527 ("Medical opinions are statements from acceptable medical sources. . . ."); Social Security Ruling 06-03p , 71 Fed. Reg. at 45,594 ("[O]only 'acceptable medical sources' can give us medical opinions."); *Tindell v. Barnhart*, 444 F.3d 1002, 1005 (8th Cir. 2006) (noting that in considering opinion evidence from a non-acceptable medical source, the ALJ is not bound by treating source regulations and has "more discretion" to consider weight to give opinion). Moreover, this was not the only reason the ALJ gave her opinion "little weight." He also found her opinion was not supported with adequate explanations, it appeared she adopted Vanepps' subjective allegations and her records included findings that were inconsistent with the extreme limitations provided in her opinion. AR 28.

I further agree with Judge Williams' conclusion that the opinion from physician assistant Wagner and Dr. Heineman is a joint opinion. It is signed by both providers. AR 549-54. The corresponding medical record also states that it is from "Visit with provider: Brian Heineman DO on 06/09/2016" and it was "Finalized and Signed" on

06/09/2016 by Emily Wagner.  AR 558-61.  There is no reason this opinion should not be treated as a joint opinion from these two providers and the ALJ's reasons for giving this opinion "considerable weight" are supported by substantial evidence.

Finally, Dr. Daly's opinion reflects findings consistent with the medical evidence, including records submitted after Dr. Daly's review.  The fact that the ALJ recognized she had "specific knowledge of the applicable rules and regulations" is a factor specifically recognized in the regulations as a relevant consideration.  Moreover, this was not the ALJ's sole reason for giving Dr. Daly's opinion "great weight."  He also concluded her opinion was supported by a thorough evaluation of medical findings.  *See* AR 32.  I agree with Judge Williams that the weights assigned to the various medical opinions by the ALJ are supported by substantial evidence in the record as a whole.

The ALJ's analysis of the medical evidence and medical opinion evidence is supported by substantial evidence in the record as a whole.  This evidence, in conjunction with Vanepps' subjective allegations (when appropriately weighed as discussed below), supports the ALJ's RFC findings.  Vanepps' objections related to the medical evidence in support of the RFC are overruled.

### C.    *Vanepps' Credibility*

Vanepps argues that Judge Williams misunderstood her argument regarding the deference that should be given to an ALJ based on a video hearing.  She states: "common sense and caselaw both suggest that the ALJ of an in-person hearing has a greater opportunity to evaluate a witness than the ALJ of a video hearing, and thus this video hearing case should result in less deference to the ALJ's credibility determination."  *Id.* at 3.  She cites legal authority in her initial brief in support of this argument.  *See* Doc. No. 14 at 17.

Vanepps also argues that Judge Williams did not consider whether the ALJ's reasons for discrediting her allegations were supported by the record, but merely approved them because they were consistent with the *Polaski* factors.  She contends that

Judge Williams' finding on the issue of whether an ALJ must evaluate if noncompliance is related to an impairment is not based on current regulations and case law. Finally, she contends that her activities of daily living are not consistent with an individual who can perform work on a daily basis.

I find that a video conference versus in-person hearing had no impact on the ALJ's credibility determination. The ALJ did not cite any personal observations he made during the hearing as a reason to discredit Vanepps' subjective complaints. Rather, his reasons for finding her allegations not fully credible were based on the inconsistencies between what Vanepps said and what was documented in the records, particularly the medical records. *See* AR 22-24; 31-32. Because the ALJ did not rely on any personal observations in finding Vanepps' allegations not fully credible, the use of a video hearing is irrelevant in this case. I agree with Judge Williams that no lesser standard need be applied to the ALJ's credibility assessment based on the nature of the hearing.

I disagree that Judge Williams blindly accepted the ALJ's credibility determination merely because the ALJ cited factors that were consistent with *Polaski*. Judge Williams noted that the ALJ considered factors consistent with *Polaski* and then described the specific inconsistencies the ALJ found between the record and Vanepps' subjective complaints. Doc. No. 19 at 15-16. He stated:

> In his decision, the ALJ pointed to the lack of medical findings to support claimant's subjective complaints, noted that claimant was chronically noncompliant, and pointed out, among other things, the inconsistency of claimant's complaints and the observations medical sources made of claimant's movements when leaving a medical clinic. Regarding claimant's noncompliance, upon my own review of the medical records I find there was sufficient evidence for the ALJ to conclude that claimant was chronically noncompliant, particularly with regard to following recommendations for addressing her diabetes. The ALJ was permitted to conclude that that noncompliance was a factor to consider in discounting claimant's subjective complaints. Regarding claimant's assertion that the ALJ erred in stating that claimant was able to drive, my review of the record reflects that the ALJ did not err. During her February 18, 2015, testimony, claimant admitted having a driver's license and when asked if she was able

> to drive, answered: "So far, yeah . . ." and went on to state that she tries to limit her driving because it bothers her in various ways. (AR 57). She admitted driving to the hearing. (*Id.*). At the December 13, 2016, hearing claimant again admitted having a driver's license but claimed she did not in fact drive because "I don't feel safe till I get my diabetes under control and my fibromyalgia." (AR 96-97). Claimant's testimony would support the ALJ's conclusion, therefore, that claimant was able to drive, even if she chose not to do so.

*Id.* This reflects a consideration of the ALJ's reasons after reviewing them against the record as a whole.

As for Vanepps' noncompliance with treatment recommendations, I agree with Judge Williams that this was a good reason to find that Vanepps' functional limitations were not as severe as alleged. Judge Williams concluded it was unnecessary to determine whether noncompliance was related to an impairment as long as noncompliance was not the only reason standing between a finding of disability and non-disability. *See* Doc. No. 19 at 15, n. 5. This is correct. The applicable regulations provide that the Commissioner will consider whether a claimant has an acceptable reason for failure to follow prescribed treatment. *See* 20 C.F.R. § 404.1530 (2016); *Titles II & XVI: Failure to Follow Prescribed Treatment*, SSR 82-59 (S.S.A. 1982).[4] Examples of good reasons for not following treatment include: the treatment is contrary to the claimant's religion, cataract surgery that could result in a severe loss of vision, surgery that was previously performed

---

[4] Social Security Ruling 82-59, notes that in identifying failure to follow prescribed treatment as an issue, the ALJ must first make a determination of failure and then evaluate whether the failure is justifiable. In determining whether an individual has failed to follow prescribed treatment, the following conditions must exist: the evidence establishes that the individual's impairment precludes engagement in substantial gainful activity, the impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death, treatment which is clearly expected to restore capacity to engage in any substantial gainful activity has been prescribed by a treating source and the evidence of record discloses that there has been a refusal to follow prescribed treatment. *Titles II & XVI: Failure to Follow Prescribed Treatment*, SSR 82-59 (S.S.A. 1982). The record indicates that all of these conditions are present with regard to Vanepps' diabetes.

with unsuccessful results and the same surgery is recommended again for the same impairment, risky treatment, treatment that involves amputation of an extremity or major part of an extremity. *Id*. Vanepps' failure to follow recommended treatment for her diabetes does not fall within any of these categories.

The Eighth Circuit has clarified that "Social Security Ruling 82-59 does not restrict the use of evidence of noncompliance, it merely delineates the reasons that the Social Security Administration may deny benefits to an otherwise disabled person because they fail to comply with their doctor's prescribed treatment." *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Even though Vanepps argues that the ALJ must take her impairments into account in order to use noncompliance as a reason for discrediting her subjective allegations, she did provide any actual reasons as to why she was noncompliant with treatment recommendations. There is no indication that her noncompliance is related to any of her impairments. Even it there was, the ALJ did not discredit Vanepps' subjective allegations based solely on her noncompliance. His credibility finding was also based on inconsistencies in the record, including the medical evidence and observations by medical providers that Vanepps' impairments may not be as disabling as alleged,[5] as well as inconsistencies in Vanepps' own statements and daily activities.

Moreover, Vanepps' characterization of her noncompliance as a mere failure to meet the strict diet of a diabetic is a serious understatement. Her noncompliance extended beyond diet and was consistently noted by providers throughout the medical records. *See e.g.*, AR 441 (dated 8/15/2014 - "not checking sugars or watching diet" and "Has been off meds – not watching diet"); AR 446 (dated 8/22/2014 – "Not checking blood sugars.

---

[5] The ALJ noted that she had poor effort during a physical examination and her mobile abilities were, at times, inconsistent with her reports of pain or limitations. AR 29. Indeed, PA Wagner and Dr. Heineman remarked "I have significant concern regarding accuracy of above reported pt's claim" and "serious concern for inaccuracies throughout the evaluation" on the evaluation form. AR 30-31. They noted inconsistencies in the report regarding Vanepps' allegations and their observations. *Id* at 31-32. The objective evidence also included normal EMG findings. AR 31.

Not really taking cholesterol medication."); AR 451 (dated 3/13/14 – "She has not been really watching her sugars"); AR 469 (dated 1/13/2015 – "Negative for checking blood sugar, checking feet, following diet, exercising, losing weight . . . ."); AR 636 (dated 7/30/2015 – "Positive for checking blood sugar (sometimes) and checking feet. Negative for following diet, exercising . . . ."); AR 649 (dated 11/17/2015 – "still doesn't like to ck sugars"); AR 656 (dated 2/22/2016 – "Has not gone to diabetes classes as promised."). While there are some reports that Vanepps was taking her medication and checking her blood sugars, her noncompliance was noted far more often in the record. Based on the record in this case, I find that Vanepps' noncompliance is a good reason to discredit the severity of her impairments and related limitations as alleged. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Finally, with regard to daily activities, the ALJ noted that Vanepps testified she was able to drive, perform personal care tasks and do household chores independently, taking some breaks. AR 31. She could also do dishes for a short time, make sandwiches, shop, care for her cat and take care of her personal needs. *Id.* She worked on a part-time basis during part of the relevant period. *Id.* A review of the record shows that Vanepps stated she tries to do daily housework (AR 368), shops for two or three hours at a time (AR 369) and does "ok – most of the time" with walking (AR 371). These activities are consistent with the RFC provided by the ALJ and inconsistent with disabling impairments. I find that this reason – in conjunction with the others – is a good reason for discrediting Vanepps' subjective allegations and that the ALJ's credibility determination is supported by substantial evidence in the record as a whole. Vanepps' objections related to the ALJ's credibility determination are overruled.

## V. CONCLUSION

For the reasons set forth herein:

1.   Vanepps' objections (Doc. No. 20) to the Report and Recommendation (Doc. No. 19) are **overruled**.

2.   **I accept** Judge Williams' Report and Recommendation (Doc. No. 19) without modification. *See* 28 U.S.C. § 636(b)(1).

3.   Pursuant to Judge Williams' recommendation:

     a.   the Commissioner's determination that Vanepps was not disabled is **affirmed**; and

     b.   Judgment shall enter in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 18th day of March, 2019.

_____
Leonard T. Strand, Chief Judge